KENJI M. PRICE  #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Acting Chief, Criminal Division

REBECCA A. PERLMUTTER
GREGG PARIS YATES #8225
Assistant U.S. Attorneys
United States Attorney's Office
District of Hawaii
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Fax: (808) 541-2958
E-Mails: Rebecca.Perlmutter@usdoj.gov
          Gregg.Yates@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 17-00001 HG |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S MOTION *IN* |
| vs. | ) | *LIMINE* FOR ADMISSION OF |
| | ) | SUMMARY CHARTS |
| | ) | |
| SHEILA HARRIS, | ) | TRIAL DATE:   April 24, 2018 |
| | ) | TIME:            9:00 a.m. |
| Defendant. | ) | JUDGE:         Hon. Helen Gillmor |
| _____ | ) | |

## GOVERNMENT'S MOTION *IN LIMINE* FOR ADMISSION OF SUMMARY CHARTS

The United States, by and through the undersigned attorneys, the government hereby moves for the Admission of Summary Charts pursuant to Federal Rule of Evidence 1006.

The government intends to introduce into evidence a series of summary charts and a timeline pursuant to Federal Rule of Evidence 1006. These exhibits will be marked and provided to the defense in advance of trial. The parties' exhibit exchange date set by the Court is April 3, 2018. The underlying evidentiary information, which is voluminous, has also been provided to defense for review as part of discovery production. The charts include summaries of claims data, timeline of defendant's communications from 2008 through 2012, and a summary of speech therapy appointments taken from a parent's calendar.

## I.    Background

The defendant, Sheila Harris, is charged in a First Superseding Indictment (the "indictment") with seventeen counts, including wire fraud, aggravated identity theft, and false statements relating to health care matters. The defendant was the owner and operator of Harris Therapy, Inc. ("Harris Therapy"). Harris Therapy provided therapeutic services, including speech therapy, physical therapy, and occupational therapy. The defendant contracted with Tricare on behalf of Harris Therapy to provide services to Tricare beneficiaries. Tricare is a federal funded

healthcare benefits program for U.S. military members and their families.  The speech therapy patients that were part of the scheme alleged in the indictment were Tricare beneficiaries as minors in military families.

The indictment alleges the defendant knowingly billed Tricare for false claims on consecutive dates of speech therapy services when no services were actually provided to a Tricare beneficiary on those dates.  She also knowingly falsified the rendering provider on most of the claims submitted to Tricare in the scheme.  The claims submitted to Tricare for payment were required to include accurate information pertaining to the dates of service and the rendering provider. For the most part, Harris Therapy sent claims to Tricare for payment that covered multiple dates of service for a particular beneficiary within one claim.  Tricare paid Harris Therapy a set reimbursement rate for each particular date of service claimed for speech therapy under Current procedural Terminology ("CPT") code 92507.[1] Speech therapy could only be claimed once per day per patient regardless of the length of time for service.

The scheme began in July 2008, when Tricare dramatically reduced the speech therapy reimbursement amounts paid to Harris Therapy because of Harris Therapy's over billing for services.  It continued through 2012, when Tricare

---

[1] CPT codes are standardized medical procedure codes used by the health care industry to categorize services and determine billing and reimbursement.

audited Harris Therapy due to false billing complaints from a parent of a minor beneficiary.  The counts in the indictment relate to 13 patient beneficiaries and 4 speech therapy providers (known as speech language pathologists).  The full scope of the scheme involved approximately 5,259 falsified speech therapy sessions included in 2,328 false claims submitted to Tricare, and over 90 minor beneficiaries.

## II.     Summary Evidence Is Admissible Pursuant to Federal Rule of Evidence 1006

Federal Rule of Evidence 1006 allows for the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  The admission of summary charts as substantive evidence is appropriate when the documents are unmanageable and it is the practicable means of making the contents available to the judge and jury.  *See* Fed. R. Evid. 1006, Advisory Committee Notes.  Moreover, Federal Rule of Evidence 611(a)(2) gives the court discretion to present evidence in an expeditious manner that would avoid wasting time.

To introduce the summary evidence, the government must establish two requirements for admissibility: (1) that the underlying materials are based on admissible evidence, and (2) that underlying materials were made available to the opposing party.  *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011).  Although the materials must be admissible, they need not actually be admitted into

4

evidence at trial. *Id.* On the other hand, just because the underlying documents may be already in evidence does not mean that they can be "conveniently explained in court," such that a summary exhibit may be appropriate. *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985) (citing *United States v. Means,* 695 F.2d 811 (5th Cir. 1983)). The availability of the documents to the opposing party ensures the defense has "an opportunity to verify the reliability and accuracy of the summary prior to trial." *Id.*

## III.   Summary Charts Include Underlying Admissible Evidence

### a. *Claims Data Underlying Evidence in Summary Charts is Admissible*

The underlying speech therapy claims data is not intended to be admitted at trial, but it would be admissible evidence. The claims data is admissible as business records pursuant to Federal Rule of Evidence 803(6). The government has also filed a separate notice with attached certificates of authenticity for records pursuant to Rule 902(11) that covers this information.

The Defense Health Agency ("DHA") components maintain the claims data as part of the Military Health System. DHA is the government agency under the U.S. Department of Defense that manages and oversees the Tricare program and its affiliates. As part of its role, it is the storage repository for the historic Tricare medical information kept on electronic file servers. A witness would testify that the claims data was captured by the electronic system at or near the time when it

was transmitted by the provider (in this case, Harris Therapy), kept and maintained in the ordinary course of business, and recorded as part of the regular practice of Tricare and its affiliates. *See United States v. Ray,* 930 F.2d 1368, 1370 (9th Cir. 1990).

b. *Written Communications Underlying the Evidence in the Timeline Are Admissible*

The timeline information includes evidence from numerous written communications, including emails and texts, which are admissible under multiple rules of evidence.[2] A witness who was a party to these communications can lay the foundation for the admissibility of the underlying evidence.

The content of the communications also are not excludable as hearsay. Federal Rule of Evidence 801 defines hearsay, which is and out of court statement offered to prove the truth of the matter asserted. A statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

The communications either are not hearsay or qualify as exceptions to hearsay. For emails, the header information, which includes the recipients and date and time, is admissible because it is not a hearsay statement. *See United States v.*

---

[2] The parties are scheduled to exchange exhibits on April 3, 2018, which will include the specific communications in the timeline. After the exchange, the parties will be discussing stipulations and objections to exhibits, which are due on April 10th and April 13th, respectively. To the extent that the defense objects to the admission of particular exhibits, the government will address with the specific grounds for admissibility at that time.

*Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005) (holding machine generated information on emails are not hearsay statements).  The statements included within the communications largely reflect admissions from the defendant and statements of the defendant's agents or employees, which are admissible as non-hearsay.  *See* Fed. R. Evid. 801(d)(2)(A)&(D) (party admissions and admissions of agents and employees).  In addition, the communications fall under other bases for admission, including: non-hearsay directions, instructions, questions, and transmissions; and additional context, clarification, state of mind, and effect surrounding such admissions.  *See, e.g.*, *United States v. Gadson*, 763 F.3d 1189, 1211-12 (9th Cir. 2014) (admitting statements for clarification and context).

Moreover, many of these communications also qualify as business records under Rule 803(6) because they do not reflect casual conversation.  The defendant and her agents corresponded with therapists regularly over email to receive invoices and therapist patient notes pertaining to the business and to direct and disseminate information pertaining to the practices and procedures of the business. Witnesses would confirm that the communications were maintained in the ordinary course of business and recorded as the regular practice of the business.

In addition, the invoices and notes were required to be generated and maintained by the provider agreements between Harris Therapy and Tricare and other regulations pertaining to medical records information and recordkeeping

practices.  Not only are those types of documents business records, but the emails

themselves are admissible to show documents and information were transmitted

and that the defendant was aware of such transmissions, which are offered for non-

hearsay purposes.  *See United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986)

(statement "offered solely for the fact that it was made" not hearsay); *United States*

*v. Rogers*, 321 F.3d 1226, 1229-30 (9th Cir. 2003) (not hearsay when criminal

complaint admitted to show defendant was aware of fraudulent scheme).

The chart of a parent's calendar appointments includes years of summary

information taken from the calendar of a parent.  The underlying information is

reliable, and thus falls within the residual exception of Federal Rule of Evidence

807.  This rule requires that the statement (1) has circumstantial guarantees of

trustworthiness, (2) is offered as evidence of a material fact, (3) is more probative

than other evidence, and (4) its admission will be in the interests of justice.  Fed. R.

Evid. 807.

The parent will testify at trial the information on the calendar was recorded

at or near the time of setting the appointment in order to keep track of the child's

schedule, which is more probative than other evidence that could be presented.

The very act of recording information on a calendar is intended to be accurate in

order to maintain an orderly and reliable schedule and has circumstantial

guarantees of trustworthiness.  The information is material to prove who was the

actual speech therapy provider for the Tricare beneficiary and to prove the actual dates of service during the relevant time period.  Moreover, the underlying calendar appointment information could also be admissible as a statement of a then existing plan (*see* Fed. R. Evid. 803(3)) or a past recollection recorded (*see* Fed. R. Evid. 803(5)).  Any challenge to the veracity of the information goes to its weight and not its admissibility.

## IV.    The Underlying Evidence Is Available to Defense

The government provided to the defense all of the underlying data and documentary information that forms the basis for the summary evidence in discovery productions.[3]

## V.    Summary Charts Provide the Most Manageable Format To Present Voluminous and Probative Information

### a. *Allows for Organized Presentation of Voluminous Information*

The summaries were created to present probative evidence in a succinct manner.  The use of summary evidence will avoid the need for numerous witnesses and the jury to cobble together and pour through thousands of pages of information, which would be burdensome and time consuming without the aid of summaries.  *See United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990)

---

[3] Specifically, on December 18, 2017, the government provided defense counsel with a list of summary charts that included data and the corresponding information from the discovery materials upon which each chart relies.  The timeline will include reference to the exhibit number of the underlying communication.

(allowing FBI agent to summarize insurance company records that had already been introduced into evidence to show patterns because the court could not "rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important inferences about the defendants' guilt").

The summary charts pertaining to claims deal with voluminous material from multiple sources.[4] The information relies on the claims data submitted by Harris Therapy, the provider, to Tricare, the insurer, for payment for speech therapy services purportedly performed on behalf of Tricare beneficiaries. This comprehensive data set in its raw spreadsheet format includes thousands of pages.[5] The data set in its raw format is not only voluminous, but would also be difficult for the jury to decipher in a short period of time at trial. The summary charts

_____

[4] Besides the raw claims data, the charts also rely on the corroborative information from invoices submitted to Harris Therapy from therapists and anticipated testimony. This shows the flow of information with directions from the defendant on how to invoice, actual sessions with patients, invoices from the therapist to Harris Therapy, claims submitted to Tricare on the basis of those invoices, and then payments made to Harris Therapy based on those claims. Further, the charts track the claims payments made by Tricare to Harris Therapy into the company's bank account at Bank of Hawaii. These records are admissible through Federal Rule of Evidence 803(6) as they qualify as business records, and the Bank of Hawaii records are also admissible pursuant to Rule 902(11).

[5] The other unwieldy way in which to display the reams of data would be to transpose each claim onto a Healthcare Form 1500, which is the official printed format of an individual claim based on the stored information. However, that format would also involve thousands of individual pages leaving the jury to hunt and peck for the relevant information on each page and without any way in which to identify a pattern or commonality amongst the voluminous claims information. Only the individual claims pertaining to the charges in the superseding indictment are marked as exhibits and printed in this format for the jury to examine each one of these individually.

condense this data and display it so that it is easy to understand. Thus, the data has been distilled down to the most relevant information for trial and then transformed into a series of summary charts to explain each count in the indictment and the full scope of the scheme. These charts take voluminous material and transform it so that it is manageable and straightforward for the benefit of the jury, the court, and the defense.

### b. *The Summary Evidence is Probative of the Scheme*

The indictment charges a scheme to defraud from "[b]eginning on a date unknown to the Grand Jury, but from at least October 2010 through in or about May 2012." (Doc. No. 17, ¶ 9). The counts included in the indictment are for particular electronic claims for particular Tricare beneficiaries. The counts charged cover 13 beneficiaries over a two-month period in September and October 2011. These charges do not encompass the entirety of the scheme to defraud for the even the 13 beneficiaries, much less the numerous other beneficiaries whose false billings were not specifically charged. The evidence included in the summary charts, however, covers the full scope of the charged scheme for speech therapy claims billed to Tricare on behalf of beneficiaries for dates when services were not rendered and for the wrong speech therapist.

In *United States v. Rizk*, the Ninth Circuit affirmed the district court's admission of summary charts under Rule 1006 in a situation comparative to this

11

case.  660 F.3d at 1128-1133.  At trial, the government introduced several charts

and testimony to summarize information involved in 96 real estate transactions that

were part of a conspiracy to defraud.  *Id.* at 1128 (introducing charts, including one

chart "that used color-coding to show how [the defendant] used the properties she

had appraised at inflated value as comparables in later appraisals").  Although the

indictment only charged nine of the transactions, the district court admitted the

summary evidence of all 96 transactions.  *Id.* at 1129, n.1.  The Ninth Circuit

explained that the government was entitled to "submit proof on the full scope" of

scheme.  *Id.* at 1131-32.  *See also United States v. Robinson* 774 F.2d 261, 276

(8th Cir. 1985) ("The summary properly included all 105 applicants [rather than

the 15 named in the indictment], because information regarding all of these

individuals was relevant in delineating the enormous scope of the [loan fraud]

scheme").  Although *Rizik* involved a conspiracy to defraud, the same analysis

applies to this case.

    At trial, the government will present evidence through emails, documents,

data, and witness testimony to show that the scheme alleged in the indictment

actually began in or around July 2008.  The scheme was directed by Sheila Harris

during its entirety.  Consequently, claims that fall within the temporal scope of the

scheme and follow the pattern are properly included in the summary charts as

intrinsic to the scheme itself.  *See id.* at 1131 (quoting *United States v.*

*Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004) ("each action listed in the government's summary exhibit 'was inextricably intertwined with the conspiracy, and therefore not subject to Rule 404(b), because each occurred within the temporal scope of the conspiracy and comprised the conspiracy'").

In addition, the timeline summary exhibit distills almost four years of communications between the defendant and the speech therapists.  It takes disparate information the defendant provided to multiple sources and puts in it one coherent timeline for the jury to review.  Rather than hunt and peck for emails and other communications that demonstrate a course of conduct over time, the timeline puts the pertinent emails introduced through multiple witnesses in a coherent order.


DATED:  Honolulu, Hawaii, March 27, 2018.

Respectfully submitted,

KENJI M. PRICE
United States Attorney
District of Hawaii



By */s/ Rebecca A. Perlmutter*
    REBECCA A. PERLMUTTER
    Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served Electronically through CM/ECF:

Victor Bakke, Esq.
vbakke@yahoo.com

Attorney for Defendant
SHEILA HARRIS

DATED:  March 27, 2018, at Honolulu, Hawaii.


/s/ Rebecca A. Perlmutter
United States Attorney's Office
District of Hawaii

14