IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00001 HG-01 |
| Plaintiff, | ) | |
| vs. | ) | |
| SHEILA HARRIS, | ) | |
| Defendant. | ) | |

**ORDER NUMBER TWO ON PRETRIAL MOTIONS**

The Government filed four Motions in Limine seeking to permit testimony from witnesses that it claims are unavailable to appear in-person. (ECF Nos. 52, 53, 54, and 77).

The Government initially requested the following witnesses be permitted to testify via deposition or via live two-way video testimony:

(1) April Yates;

(2) Kathy Coonce;

(3) Samantha Vega; and,

(4) Julie Marlowe.

Following a hearing on April 12, 2018, the Government made additional efforts in order to assist the witnesses and make them available to testify in-person.

**(1) April Yates** - The Government states that arrangements were possible to enable April Yates to come to Hawaii in order for her to testify in-person.

1

**(2) Kathy Coonce** - The Government has withdrawn its request for Kathy Coonce to testify via deposition. She will no longer be called as a witness.

The Government continues to maintain that Ms. Vega and Ms. Marlowe are unavailable due to their child care responsibilities for their disabled children.

**(3) Samantha Vega -** The Government seeks to admit the deposition testimony of Samantha Vega. In the alternative, the Government requests permission for Ms. Vega to testify via live video.

**(4) Julie Marlowe -** The Government requests that Julie Marlowe be permitted to testify via live two-way video teleconference.

## I.  Confrontation Clause

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. This clause, known as the Confrontation Clause, "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988).

The right to a physical, face-to-face confrontation is not absolute and may be compromised in limited circumstances. First, the right to face-to-face confrontation is not violated if there

is:

>    (1)  a public policy exception where the necessities of the case dictate an alteration to the confrontation, as set forth in Maryland v. Craig, 497 U.S. 836, 848 (1990); or,
>
>    (2)  the witness is unavailable and the defendant already had a prior opportunity to cross-examine the witness, as set forth in Crawford v. Washington, 541 U.S. 36, 59 (2004).

## II.  Public Policy Exceptions

The United States Supreme Court has found an exception to the Confrontation Clause where "considerations of public policy and necessities of the case" so dictate. Maryland v. Craig, 497 U.S. 836, 848 (1990).

In Craig, the United States Supreme Court upheld a Maryland rule of criminal procedure that allowed a child victim of abuse to testify by one-way closed circuit television from outside the courtroom, despite a challenge by the defendant pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution. Id. at 858. The defendant and the courtroom could see the testifying child witness on a video monitor but the child could not see the defendant. The United States Supreme Court upheld the Maryland rule on the basis that it served "an important public policy" and the reliability of the testimony was otherwise assured. Id. at 850. The Court found that the State's interest in protecting child witnesses from the trauma of testifying in a child abuse case was sufficiently important to

justify the use of the video testimony.  Id. at 852.

In United States v. Gigante, 166 F.3d 75, 80 (2d Cir. 1999), the United States Court of Appeals approved the use of two-way, closed circuit television to present the testimony of a witness from an undisclosed location outside the courtroom due to "exceptional circumstances."  The appellate court found that a witness's own severe health problem could allow for a public policy exception to allow for video testimony.

The appellate court permitted the use of live video testimony outside the court because the witness: (1) was a former mobster participating in the Federal Witness Protection Program; (2) was at an undisclosed location; and (3) was in the final stages of inoperable, fatal cancer.  Id. at 80-81.  The appellate court held that the defendant's Confrontation Clause rights were protected because the trial court held an evidentiary hearing and made specific factual findings regarding the exceptional circumstances that made it inappropriate for the witness to appear in the same room as the defendant.  Id.

In United States v. Rosenau, 870 F.Supp.2d 1109, 1113-14 (W.D. Wash. 2012), the district court found a public policy to allow the Government to effectively try cases with respect to unavailable witnesses in cases involving the breach of international boundaries in narcotics smuggling.  The district court allowed for the use of two-way live video testimony of a witness located in Canada who was not able to enter the United

4

States.  Id.

In United States v. Sapse, 2012 WL 5334630, *2 (D. Nev. Oct. 26, 2012), the District Court for the District of Nevada found that the use of live video testimony was appropriate and an exception to the Confrontation Clause was permitted given the important public policy at issue.  The district court explained:

> The primary public policy interest at issue in this case is allowing the government to pursue wire and mail fraud cases where the victims are infirm due to age or disability, and especially, as in this case, where they were **targeted** for those reasons.  Allowing crimes to go unchallenged because the victims are physically unable to travel to and enter the courthouse undermines significant public interest.
>
> (Id.)

The district court found that a proposal by the Government to allow six witnesses to testify via live video was appropriate because of the witnesses' "extremely poor physical condition make them unavailable to testify if they have to travel to" Las Vegas. Id. at *1.

The district court found that each witness was "severely disabled to the point that at least four of the six have lost the use of their legs, many are incontinent, several require the aid of permanent caregivers and cannot perform the most basic functions of life without assistance."  Id.

### III. **Public Policy Exception Present In This Case**

As in Sapse, there are important public policy reasons to consider the use of two-way live video testimony in this case.

5

The patients at issue in this case had health benefits provided from the Department of Defense Healthcare System available for military families. These military families are transferred repeatedly from station to station as a result of their status as active duty military personnel. The military families are required to move throughout the United States and the world.

The patients in this case were children with special needs that required services in Occupational Therapy, and/or Physical Therapy, and/or Speech Therapy. The patients at issue in this case were referred to Harris Therapy, Inc. to receive therapy services while their military families were stationed in Hawaii between 2010 and 2012. Harris Therapy, Inc. provided the types of therapy services necessary to assist these special needs children.

The Government engaged in an investigation of Harris Therapy, Inc. after complaints were made by military families to TRICARE. The investigation was conducted by the Department of Defense Criminal Investigation Service and the Federal Bureau of Investigation.

Following the investigation, Defendant Sheila Harris, the owner and operator of Harris Therapy, Inc. was indicted for the charges set forth in this case in 2017.

Many of the military families who received services between 2010 and 2012 have been relocated due to military orders, often

several times.

The Government has an important interest in pursuing cases involving fraud to the health care system provided to military families. The families in this case are particularly vulnerable given the special needs of the children who were receiving therapy services.

The charges involve wire fraud, aggravated identity theft, and false claims related to health care. The First Superseding Indictment charges that children with special needs of military families were patients involved in the fraud scheme. The charges claim that the Defendant devised a scheme to defraud TRICARE, which is the health care entitlement program for United States military families.

The United States military requires its families to relocate on a regular basis, and at least 7 parents to be called as witnesses are no longer stationed in Hawaii. A number of other witnesses are also required to travel to Hawaii to testify. The Government has engaged in a good-faith effort to coordinate its witnesses and make them available in-person for trial.

Two of the parents whose special needs children received treatment from Harris Therapy, Inc. have stated they are unable to travel to Hawaii for trial. If a parent is truly unavailable to leave their special needs child, the exceptional circumstances presented in this case favor allowing testimony by live video.

## **IV. Use of Two-Way Live Video Testimony**

The Government requests that Samatha Vega be allowed to testify via deposition. In the alternative, the Government requests that Ms. Vega be permitted to testify via live video.

Live video conferencing is preferable to deposition testimony. In <u>United States v. Gigante</u>, 166 F.3d 75, 81 (2d Cir. 1999), the Second Circuit Court of Appeals established that trial courts may allow testimony via live video in "exceptional circumstances" when the use of such technology "furthers the interest of justice."

The Second Circuit Court of Appeals found that live video testimony provides greater protection of a defendant's rights than deposition testimony. The appellate court explained that the use of live video testimony was preferable because it would preserve the most vital characteristics of in-court testimony, specifically:

(1) the giving of testimony under oath;

(2) the opportunity for live cross-examination;

(3) the ability of the fact-finder to observe demeanor evidence; and,

(4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence.

<u>Id.</u> at 80.

Other courts have agreed and found that two-way live video testimony is preferred to deposition testimony in order to allow

defense counsel to have a full and fair opportunity to conduct cross-examination in the midst of trial. United States v. Sapse, 2012 WL 5334630, *2 (D. Nev. Oct. 26, 2012).

In United States v. Rosenau, 870 F.Supp.2d 1109, 113-14 (W.D. Wash. 2012), the district court explained that live video testimony is appropriate in exceptional circumstances because it adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded to live, in-person testimony. Id. (citing Craig, 497 U.S. at 851).

The district court explained that the use of live videoconference testimony did not violate the Confrontation Clause or the United States Supreme Court's precedent in Crawford v. Washington, 541 U.S. 36 (2004). The district court stated that "[a] close reading of Crawford reveals that the opportunity for rigorous cross-examination, rather than mere physical presence of the defendant, is the central tenet of the confrontation right." Rosenau, 870 F.Supp.2d at 1115.

## V. Unavailability of Witnesses

Courts have generally found that a witness's own severe and chronic medical problem is required to render a witness unavailable to testify in person. Fed. R. Evid. 804(a)(4); United States v. McGowan, 590 F.3d 446, 454-55 (7th Cir. 2009); United States v. Keithan, 751 F.2d 9, 12-13 (1st Cir. 1984)

9

(elderly witnesses whose physical infirmities confined them to homes were unavailable).

The Ninth Circuit Court of Appeals has explained that in evaluating whether a witness is unavailable due to the witness's own medical infirmity as set forth in Federal Rule of Evidence 804(a)(4), courts should consider factors such as:

(1) the nature of the infirmity;

(2) the expected time of recovery;

(3) the reliability of the evidence concerning the infirmity; and,

(4) other special circumstances.

United States v. McGuire, 307 F.3d 1192, 1205 (9th Cir. 2002); see United States v. Faison, 679 F.2d 292, 297-99 (3d Cir. 1992), aff'd, 725 F.2d 667 (3d Cir. 1983).

The trial court is directed to consider whether an adjournment or short continuance would provide an alternative to the witness's unavailability. McGuire, 307 F.3d at 1205; United States v. Rhodes, 713 F.2d 463, 472-73 (9th Cir. 1983).

Here, the Government has stated that a continuance would not assist the availability of the witnesses in this case due to the chronic nature of the illnesses of their children. The Government also indicates that a continuance would create complications and create unavailability for other witnesses who are currently available to testify in-person.

The Government requests that Samantha Vega and Julie Marlowe be permitted to testify via two-way live video due to the

exceptional circumstances of the severe illnesses of their minor children and the public policy present in this case involving military families with special needs children.

**A.   Samantha Vega**

The Government contends that Samantha Vega is unavailable to testify in-person.  The Government states that she cannot travel to Hawaii because she currently resides in North Carolina and is the caregiver to her minor son, J.V. who has special needs.

The Government submitted a letter from the United States Marine Corps stating that Samantha Vega's husband First Sergeant George L. Vega, Jr. is currently deployed and will not return until August 20, 2018.  (Marine Corps Letter dated April 16, 2018, ECF No. 112-2).

The Government asserts Samantha Vega is unable to travel with her son to Hawaii.  The Government submitted a letter from J.V.'s doctor, Karen H. Harum, M.D.  (ECF No. 112-3).  The letter states that J.V. has a diagnosis of Autism Requiring Substantial Support, explaining J.V. is often non-compliant and engages in aggressive behavior toward others.  (ECF No. 112-5).  J.V. is 10 years old and he will "hit, punch, scratch, kick, or throw items at a person in order to escape them or in order to gain access to a preferred item/activity."  (Id.)

J.V. also has mild cognitive impairment, anxiety, and seizures.  (ECF No. 112-3).  Dr. Harum's letter provides that "it

11

is not recommended that he travel to Hawaii, as this could destabilize his emotions due to the long waits, lack of predictability, time zone changes, and Samantha's need to travel as a single parent."  (Id.)

The Government also provided a letter from Board Certified Behavior Analysts Kala DeAnn Evans and Doemiko Flores from Furtherance Of Autism With Intervention, Treatment, And Health Services ("F.A.I.T.H.").  (ECF Nos. 112-4, 112-5).  The letters detail the severity of J.V.'s Autism and the difficulties he would have traveling to Hawaii.  (Id.)

The Government contends that there is no one else to care for J.V. and submitted a letter from Samantha Vega's mother, who is a medical doctor.  (ECF No. 112-6).  The letter explains that she is unable to accompany Samantha Vega to Hawaii with her son.  (Id.)

**B.    Julie Marlowe**

The Government asserts that Julie Marlowe is unable to travel to Hawaii to testify in-person.  The Government provided evidence that Ms. Marlowe's daughter, P.M., was recently in a serious accident, suffered severe brain damage, and requires round-the-clock care.

The Government provided a letter from P.M.'s doctor, Lakshmi Hariharan, M.D.  (ECF No. 112).  The letter states that P.M. is fully ventilated, G-tube fed, and immobile.  (Id.)  She needs eye care since she does not blink and needs mouth care.  She needs

chest PT and suctioning.  She needs turning frequently to prevent decubitus ulcers.  (Id.)

The letter states that P.M.'s father is a pilot and is often away from home for many days at a time.  (Id. at p. 3).  The letter explains Julie Marlowe does all the preparation of the food for the day and the nurse administers it for P.M.  (Id.)  She also "has to do the ventilation sprinting and monitoring of the vent."  (Id.)  Ms. Marlowe also home schools and takes care of P.M.'s brother.  (Id.)

## CONCLUSION

The Court will conduct a colloquy with Samantha Vega and Julie Marlowe via two-way live video to determine their unavailability to testify in-person.

Following the colloquy, the Court will rule on their unavailability.

IT IS SO ORDERED.

Dated: April 26, 2018, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

United States v. Sheila Harris, Crim. No. 17-00001 HG-01; **ORDER NUMBER TWO ON PRETRIAL MOTIONS**