IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00001 HG-01 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| SHEILA HARRIS, | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR BOND PENDING SENTENCING AND BOND PENDING APPEAL (ECF No. 206)**

On May 24, 2017, the grand jury returned the First Superseding Indictment, charging Defendant Sheila Harris as follows:

**Counts 1-11 for Wire Fraud** in violation of 18 U.S.C. § 1343;

**Counts 12-13 for Aggravated Identity Theft** in violation of 18 U.S.C. § 1028A(a)(1); and

**Counts 14-17 for False Statements Relating To Health Care Matters** in violation of 18 U.S.C. § 1035(a)(2).

(First Superseding Indictment, ECF No. 17).

On May 10, 2018, following a ten-day trial, the jury found Defendant Sheila Harris guilty on all Counts, 1 through 17, of the First Superseding Indictment. (Verdict Form, ECF No. 152).

On the same date, Defendant was remanded to the custody of the U.S. Marshal Service, having been found guilty of all 17 counts. (ECF No. 151).

On December 28, 2018, Defendant filed DEFENDANT SHEILA

1

HARRIS' MOTION FOR BOND PENDING SENTENCING AND BOND PENDING APPEAL. (ECF No. 206).

On January 4, 2019, the Government filed the GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR BOND PENDING SENTENCING OR BOND PENDING APPEAL. (ECF No. 211).

On January 8, 2019, the Court held a hearing on Defendant's Motion following sentencing.

This Order sets forth the written basis for the oral rulings rendered at the Hearing on January 8, 2019.

### **STANDARD OF REVIEW**

Defendant's December 28, 2018 Motion requested that she be released on bond both pending sentencing and on appeal.

Defendant's Motion, filed ten days before sentencing over the New Year's holiday, did not provide sufficient time to allow adjudication of her request for release pending sentencing pursuant to 18 U.S.C. § 3143(a). Defendant acknowledged at the sentencing hearing that her request for release pending sentencing was moot and withdrew her request on that basis.

Defendant continued to seek release on bond pending appeal. 18 U.S.C. § 3143(b) sets forward the standard for the detention of a defendant pending appeal.

Section 3143(b) provides, in pertinent part:

**(1)** Except as provided in paragraph (2), the judicial officer **shall** order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a

> petition for a writ of certiorari, **be detained**, unless the judicial officer finds:
>
> **(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; **and**
>
> **(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in–
>
> > **(i)** reversal;
> >
> > **(ii)** an order for a new trial;
> >
> > **(iii)** a sentence that does not include a term of imprisonment, or
> >
> > **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1) (emphasis added).

## ANALYSIS

**I. Defendant Has Not Demonstrated By Clear And Convincing Evidence That She Is Not Likely To Flee Or Pose A Danger To The Community**

Defendant has now been sentenced to 70 months imprisonment. Defendant has not met her burden to demonstrate by clear and convincing evidence that she is not likely to flee or pose a danger to any other person or the community pursuant to 18 U.S.C. § 3143(b)(1)(A).

### A. Defendant Is A Flight Risk

Defendant has provided a letter to the Court. She declined to address the Court at sentencing. The letter demonstrates that Defendant has not taken responsibility for her actions. Defendant does not acknowledge that she was the one responsible for devising the wire fraud scheme and directing the fraudulent billing to TRICARE. Instead, Defendant deflects blame to others and states only that she was "allowing our billing to be done in the manner it was done."

Defendant ignores that she profited from the scheme and earned hundreds of thousands of dollars in false billings. It is clear that she has not recognized the harm she caused to the numerous military families and their children by her fraudulent practices. She continues to minimize the severity of her actions and dispute the jury's findings after trial. She has continued to deflect her own responsibility in the proceedings on forfeiture, in her sentencing statement, and in her motion for bond.

Defendant did not take responsibility for her actions and has the means to flee. Defendant has significant assets, valued at more than $1,500,000 dollars, and generates income despite her incarceration.

The Presentence Report reflects that Defendant has family in various locations in the United States and she has relocated herself many times throughout her life living in New York, New

Mexico, Louisiana, and Florida, before moving to Hawaii.

    **B.    Defendant Poses A Danger To Others And The Community**

Danger may, at least in some cases, encompass pecuniary or economic harm. United States v. Lindsey, 680 Fed. Appx. 563, 567 (9th Cir. 2017) (citing United States v. Reynolds, 956 F.2d 192 (9th Cir. 1992)).

Defendant Harris engaged in a lengthy fraudulent scheme for a number of years, defrauding the federal government and taking advantage of military families for which she has not accepted responsibility. She continues to pose a risk to the safety of the community given the circumstances of this case. Lindsey, 680 Fed. Appx. at 567-68 (upholding the denial of a bond on appeal, finding the defendant's conduct in running a lengthy fraudulent scheme demonstrated that he was a danger to individuals and the community).

There are additional factors that demonstrate that Defendant Harris poses a risk of safety to the community. The Presentence Report reflects that Defendant has a severe alcohol dependency problem. It states, as follows:

> Approximately 5 years ago, the defendant acknowledged (to herself) that she has a drinking problem. Since that time, she has admittedly consumed 1 glass of "straight" Vodka after work, before anyone in her family notices; followed by 1 or more "mixed" Vodka drink, and 2 bottles of wine, each evening, before she "passes out."

(Presentence Report at p. 21, ECF No. 202).

Defendant also poses a risk of safety to the community given her actions with a witness who testified during the trial. The Presentence Report reflects as follows:

> During the trial, witness AF, a part-time data entry employee of [Harris Therapy, Inc.], testified. The defendant was AF's boss and directed AF's employment responsibilities. During the TRICARE audit in 2012, AF admittedly altered therapy notes at the defendant's direction and submitted them to TWHAC.
>
> AF described in-person conversations and an email correspondence with the defendant, with directions to alter therapy notes. The defendant directed AF to delete the email. In early October 2016, after receiving a grand jury subpoena for HTI documents, the defendant arranged for a meeting between herself, her attorney, AF, and AF's attorney.
>
> A few days prior to their meeting, the defendant approached AF and, in a private office at HTI, told AF that she had to ask her attorney for "immunity" and then "plead guilty" to wire/mail fraud and identity theft, because the defendant had a doctor's note to show that she was not responsible for the audit.
>
> AF later located a text message she had received from the defendant which revealed that the defendant was involved with the audit. In the text, the defendant inquired with AF as to whether she asked therapist MS to rewrite her notes. In late October 2016, the defendant fired AF via email on a Sunday evening. The following day, AF came to HTI to return her key and to retrieve some paperwork. The defendant's husband, Letterii, was present, and told AF to "just leave" and slammed the door on AF.
>
> (Presentence Report at p. 15, ECF No. 202).

Defendant received an upward adjustment in her sentencing guidelines for Obstruction of Justice related to her actions to intimidate the Government witness. This type of intimidating and threatening behavior demonstrates that Defendant may pose a threat to the safety of the community.

6

There are no conditions or combination of conditions that would reasonably assure the appearance of Defendant Harris and the safety of the community if she were released pending appeal given the nature and circumstances of the offenses, the weight of the evidence, and the history and characteristics of Defendant Harris.

**II. Defendant Has Not Demonstrated That Her Appeal Presents A Substantial Question Of Law Or Fact Likely To Result In Reversal, A New Trial, A Sentence That Does Not Include Imprisonment, Or A Reduced Sentence**

The Ninth Circuit Court of Appeals has stated that a "substantial question" is one that is "fairly debatable" or "fairly doubtful." United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985). A substantial question is one of more substance than would be necessary to a finding that it was not frivolous. Id. Defendant must also demonstrate that the question would result in complete reversal, a new trial, or a substantially reduced sentence.

Defendant makes various arguments that she represents are substantial questions for appeal purposes.

   **A.   Defendant's Argument Regarding Her False Use Of Other's Identities Does Not Present A Substantial Question On Appeal**

Defendant argues that the use of Kara Spheeris' identity for falsely billing speech therapy "was inconsequential and

meaningless." (Def.'s Motion at p. 9, ECF No. 206).

Defendant again ignores the evidence at trial and the jury's verdict. The jury found that Defendant knowingly used, without legal authority, a means of identification of another person. Specifically, it found Defendant used the means of identification of Jackson Biel, Kevin Hall, and/or Kara Spheeris, during and in relation to wire fraud offenses.

Defendant mischaracterizes the evidence and misconstrues the record in her Sentencing Statement. She attached documents at Exhibits I and J to her Sentencing Statement that were never previously provided to the Court, were never presented to the jury, and are not authenticated. These documents are an attempt, after trial, to discredit witnesses and misconstrue the record without foundation.

Defendant ignores the testimony and the overwhelming evidence at trial that Defendant Harris knowingly devised a scheme to falsify medical records and that she sent speech therapists to provide services for children before they were credentialed by TRICARE. The record conclusively demonstrates that Defendant Harris purposefully and knowingly altered the children's medical records for her own financial benefit and falsely used the identities of both the children and Kara Spheeris on the records. Defendant Harris knew that Kara Spheeris did not provide the services, but Defendant represented Kara Spheeris as a treating therapist on filings for billings

8

with TRICARE during the nearly two year period from July 2, 2010 to September 15, 2012 that Kara Spheeris was on maternity leave. Defendant's theory that Defendant was not responsible for the input of Kara Spheeris' identity information during that lengthy time frame is not supported by any evidence and was rejected by the jury.

Defendant's false use of Kara Spheeris' name and National Provider Identifier jeopardized Ms. Spheeris' credentials, certifications, and livelihood. Defendant's alteration of the children's medical histories endangered their speech therapy development, their medical insurance benefits, and their future medical care. Defendant has not presented a substantial question to challenge her identity theft convictions.

> **B.  Defendant's Argument Regarding The Admissibility Of The Testimony Of Samantha Vega and Julie Marlowe Does Not Present A Substantial Question On Appeal**

Defendant argues that the testimony of Samantha Vega and Julie Marlowe was improperly admitted.

The Court held several hearings and issued multiple orders addressing the issue of the inability of Ms. Vega and Ms. Marlowe to travel to Hawaii to testify in-person at trial. (Evidentiary Hearing on April 12, 2018, ECF No. 101; Final Pretrial Conference on April 18, 2018, ECF No. 113; Court's voir dire of Julie Marlowe on April 27, 2018, ECF No. 134; Court's voir dire of Samantha Vega on May 2, 2018, ECF No. 138).

9

The Court issued ORDER NUMBER TWO ON PRETRIAL MOTIONS that addressed the issue at length. (ECF No. 131). The Court found that a continuance would not alleviate the issue of the two witnesses' unavailability given the chronic nature of their children's infirmities and the schedules of numerous other witnesses who were required to travel to Hawaii for the trial, nine in total.

Defendant relies on the recent decision from the Ninth Circuit Court of Appeals in United States v. Carter, 907 F.3d 1199, 1210 (9th Cir. Nov. 2, 2018), which was decided after trial was completed. Carter is readily distinguishable. The witness at issue in Carter was one of the victims in that case. Here, the victim was TRICARE and the United States Government. Neither Ms. Vega nor Ms. Marlowe was a central witnesses to the trial similar to the victim in Carter.

In addition, the witness in Carter was temporarily pregnant and would have been able to testify at a later date with a simple continuance. Neither Ms. Vega nor Ms. Marlowe would have been able to testify at a specific later date. Their children's infirmities and their spouses' deployments and travel requirements would not have allowed for the scheduling of complex travel from the East Cost to Hawaii to testify along with the nine other witnesses, mostly parents in military families, who were required to travel. A simple continuance would not have allowed for Ms. Vega's or Ms. Marlowe's in-person testimony.

The Court also found a public policy exception that allowed

for Ms. Vega and Ms. Marlowe to testify via televideo. Defendant Harris specifically targeted military families in her scheme to defraud TRICARE. Only military families are eligible for TRICARE benefits and Defendant Harris falsely billed TRICARE knowing that military families regularly are moved from jurisdiction to jurisdiction which would make it difficult for them to unveil her scheme and ultimately provide evidence and testify against her.

Finally, even if the appellate court were to find a violation with the admission of the testimony of Ms. Vega and Ms. Marlowe, it is unlikely that Defendant would receive a complete reversal, new trial, or a substantially reduced sentence. The testimony of Ms. Vega and Ms. Marlowe was not essential to the prosecution. There was overwhelming evidence that would have allowed the jury to convict Defendant Harris of all Counts without their testimony. The testimony of Ms. Vega and Ms. Marlowe was limited to counts 15 and 16 in the First Superseding Indictment and would not disturb Defendant's convictions for the remaining 15 counts for which Defendant Harris was convicted. It could be argued that Defendant would not receive any change in sentence if these counts 15 and 16 were vacated because counts 1-11 and 14-17 were grouped together for purposes of sentencing in the Presentence Report. (Presentence Report at ¶ 40, ECF No. 202).

### C. Defendant's Argument Regarding The Testimony Of Laura Salazar And Rebecca Reineke Does Not Present A Substantial Question On Appeal

Defendant Harris challenges the testimony of Laura Salazar as a summary witness and the summary charts admitted at trial. Defendant also challenged the testimony of Rebecca Reineke, an employee from TRICARE.

The Court permitted their testimony and Defendant did not object to their testimony as improper expert testimony at trial. The Court issued ORDER NUMBER ONE ON PRETRIAL MOTIONS (ECF No. 115) that addressed the use of a summary witness and the summary charts.

Defendant's challenges by new counsel after-trial continually misconstrue the evidence at trial and the Court's findings and do not raise a substantial question of fact or law.

Defendant has not demonstrated that her appeal will raise a substantial question that is likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B).

## CONCLUSION

Defendant Harris' MOTION FOR BOND PENDING SENTENCING AND BOND PENDING APPEAL (ECF No. 206) is **DENIED**.

IT IS SO ORDERED.

Dated: January 11, 2019, Honolulu, Hawaii.

Helen Gillmor
United States District Judge